**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 14-73-DLB-CJS**

**STEPHEN MARK HORN**                                                    **PLAINTIFF**

**vs.**                       **MEMORANDUM OPINION AND ORDER**

**CITY OF COVINGTON, et al.**                                  **DEFENDANTS**

*** *** *** *** ***

Plaintiff Stephen Mark Horn alleges that his constitutional rights were violated when he was arrested, beaten, and then denied medical care during his five-day incarceration at the Kenton County Detention Center.  He brings 42 U.S.C. § 1983 and state-law claims against the municipality, county, detention center, officers, and other public employees involved in his arrest, detention, and prosecution.  There are currently three motions to dismiss and a motion for summary judgment before the Court, which are fully briefed and ripe for review.  (Docs. # 43, 52, 66, 70, 71, 79, 87, 88, 89, 90, 97, 98).  The issues involve federal and state immunity, the adequacy of the facts pled, whether Horn complied with the applicable statute of limitations, and whether the Court has supplemental jurisdiction over Horn's defamation claim.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Horn is a fifty-four year-old Air Force veteran and resident of Burlington, Kentucky. (Doc. # 8 at ¶¶ 11, 30).  On April 13, 2013,[1] he received a telephone call from a female

---

1) For the relevant dates, the Court relies on public records from Horn's case history (Doc. # 51-1), which it may do without converting the Rule 12(b) motions into Rule 56 motions.  *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999).

acquaintance threatening suicide and asking for help.  (*Id.* at ¶ 36).  In response, Horn drove to the woman's home and went inside to speak with her.  (*Id.* at ¶¶ 37-38).  After a long discussion, the woman stepped outside and, unbeknownst to Horn, called 911 and accused Horn of threatening her.  (*Id.* at ¶ 38).  Covington police officers arrived within minutes.  (*Id.* at ¶ 40).

When the officers arrived, Horn was standing on the front porch, with a cane and a gun holstered on his hip.  (*Id.* at ¶¶ 4, 41, 43).  After Horn asked the officers to identify themselves, Officers Greg Rodgers and William Kelly tackled him from behind.  (*Id.* at ¶¶ 42-43).  The impact caused Horn's head to slam against the ground and he temporarily lost consciousness.  (*Id.* at ¶¶ 43-44).  Although Horn offered no resistance, some of the officers struck him in the back of the head, repeatedly kicked him, and used a Taser on him; meanwhile, the other officers stood by and watched.  (*Id.* at ¶¶ 44-46).  Horn overheard one officer tell the others that he was at a nearby gas station when he "heard the call and wanted to get in on it."  (*Id.* at ¶ 46).

Horn was inside a police car when he regained consciousness.  (*Id.* at ¶ 48).  At one point, some officers pulled Horn out of the car by his ankles and dragged him across the ground until his hands became raw.  (*Id.* at ¶ 49).  As a result of the officers' actions, Horn has allegedly suffered a traumatic brain injury, hemorrhaging, post-concussion syndrome, headaches, memory loss, post-traumatic stress disorder, depression, tachycardia, and other chronic pain.  (*Id.* at ¶ 53).  The officers eventually took Horn to the Kenton County Detention Center (KCDC).  (*Id.* at ¶ 50).

Horn remained at the KCDC until his release on April 17, 2013.  (*Id.* at ¶ 66).  When he arrived on April 13, 2013, he was bleeding from his ears and genitalia, and while he was

2

there, suffered repeated hemorrhaging.  (*Id.* at ¶ 68).  Despite asking numerous KCDC employees for help, Horn received no medical attention during his first day in confinement.  (*Id.* at ¶¶ 74-75).  In response to the sight of blood and fluids draining from Horn's body, several inmates began to protest and demand that Horn be given medical assistance.  (*Id.* at ¶¶ 70-71).  On the second day, Horn again lost consciousness and continued to bleed.  (*Id.* at ¶¶ 75-76).

Horn eventually saw a medical provider from Southern Health Partners Inc. (SHP), a Tennessee corporation contracted by Kenton County to provide medical services to KCDC inmates.  (*Id.* at ¶¶ 26, 77).  The unnamed SHP employee performed some procedures (which included pushing Horn's protruding intestines back inside him and inserting a rod in his genitalia) that allegedly made Horn's conditions worse.  (*Id.* at ¶¶ 77, 78).  Horn repeatedly told KCDC officers (including Officer Bishop) and SHP employees that he needed to see a doctor or nurse.  (*Id.* at ¶¶ 70, 79).  Despite these requests for help, Horn was given no medication nor sent to the hospital.  (*Id.* at ¶ 78).  As a result of this lack of medical care, Horn has allegedly suffered from hemorrhaging, memory loss, and brain damage.  (*Id.* at ¶ 80).

A grand jury ultimately charged Horn with menacing, wanton endangerment, disorderly conduct, alcohol intoxication in a public place, and resisting arrest.  (*Id.* at ¶ 57).  After one of Horn's court hearings, prosecutor Frank Trusty "yelled across the courtroom to [Horn's] defense attorney, 'When are you going to get rid of that fag?'" (*Id.* at ¶ 63).  Horn claims that this statement was heard by several family and friends, and that his reputation has been damaged as a result.  All charges against Horn were ultimately dismissed.  (*Id.* at ¶ 64).

3

Horn filed a *pro se* Complaint on April 11, 2014 (Doc. # 1), and then through counsel filed an Amended Complaint on August 26, 2014 (Doc. # 8).  In his *pro se* Complaint, he brought § 1983 and state-law claims against the City of Covington, Covington Officer Greg Rodgers, and eight John Does.

In his Amended Complaint he names the following defendants: City of Covington; Covington Police Chief Michael Spike Jones (in his official capacity and individually), Covington police officers Greg Rodgers, Jason Gray, William Kelley, and David Pennington (collectively, the "Covington Defendants"); Kenton County, the Kenton County Detention Center, Jailer Terry Carl (in his official capacity and individually), Captain Smith, Correctional Officer Bishop, Unknown employees of the Kenton County Detention Center (collectively, the "Kenton County Defendants"); Southern Health Partners, Inc., unknown employees of South Health Partners, Inc., unknown employee of Southern Health Partners, Inc.; and Frank Trusty.

## II.    ANALYSIS

### A.    Standard of review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions."  *Id.*  Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party must cite to evidence in the record upon which "a reasonable jury could return a verdict" in its favor; a mere "scintilla of evidence" will not do. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-52 (1986). At summary judgment, a court "views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

## B.    City of Covington and Police Chief Michael Spike Jones

Horn brings § 1983 claims against the City of Covington for: (1) use of excessive force (Count I); (2) failure to intervene (Count V); (3) conspiracy (Count VI); and (4) failure to supervise resulting in false arrest (Count VII). He also asserts that Covington is liable for all torts committed by its officers under the doctrine of respondeat superior. (Count XII).

Horn brings the same § 1983 claims against Jones in his official and individual capacity, as well as claims for malicious prosecution (Count III) and Second Amendment retaliation (Count II). In addition, he raises the following state-law claims against Jones: (1) malicious prosecution (Count IX); (2) intentional infliction of emotional distress (IIED) (Count X); and (3) negligent infliction of emotional distress (NIED) (Count XI).

The Court will address these claims in the following order: (1) the § 1983 claims against Jones in his official capacity, (2) the § 1983 claims Covington, (3) the § 1983 claims against Jones in his individual capacity, (4) the state-law claims against Jones, and (5) the

5

state-law respondeat superior claim against Covington.

    **I.**    **Section 1983 claims against Chief Jones in his official capacity**

"Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself . . . ." *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Therefore, when a plaintiff brings § 1983 claims against a municipal entity and a municipal official in his official capacity, courts will dismiss the official-capacity claims as duplicative. *Thorpe ex rel. D.T. v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013); *see Ky. v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ( "There is no longer a need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly [under § 1983] for damages and injunctive or declaratory relief."). Because Horn brings § 1983 claims against Jones in his official capacity as Covington Police Chief and also brings § 1983 claims against Covington, Horn's official-capacity claims against Jones are dismissed.

    **ii.**    **Section 1983 claims against Covington**

"A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To assert a § 1983 claim against a municipality, a plaintiff must demonstrate that the alleged violation occurred "because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). A plaintiff can do so by showing one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the

6

existence of a custom of tolerance or acquiescence of federal rights violations." *Id.*

Covington seeks dismissal of Horn's § 1983 claims, arguing that Horn's Amended Complaint merely "recites the elements of a § 1983 action" without supporting facts. (Doc. # 43 at 6). In response, Horn suggests that § 1983 claims are subject to a more liberal pleading standard than other civil litigation and that "nothing in *Twombly or Iqbal* changed this . . . ." (Doc. # 70 at 5 citing *Sanders v. Sheehan*, No. 09-C-7707, 2010 WL 2990121, at *2 n.1 (N.D. Ill. July 26, 2010)). Although *heightened* pleading standards do not apply to § 1983 claims*, Leatherman v. Tarrant Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993), district courts in the Sixth Circuit have rejected Horn's argument that a *lower* pleading standard applies. *See e.g.*, *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F.Supp.2d 747, 751 (M.D. Tenn. 2010) ("In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal's* standards strictly."); *Vidal v. Lexington Fayette Urban Cnty. Gov't*, No. 5:13-117-DCR, 2014 WL 4418113, at *3 (E.D. Ky. Sept. 8, 2014); *Kustes v. Lexington–Fayette Urban Cnty. Gov't.*, No. 5:12–323–KKC, 2013 WL 4776343, at *5 (E.D. Ky. Sept. 3, 2013).

Therefore, like all civil plaintiffs, Horn must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 55 U.S. at 570. In other words, his complaint must contain more than mere labels, conclusions, and the elements of his cause of action. *Id.* at 555. To adequately state a *Monell* theory of liability, he must identify and describe the official policy or custom that resulted in a constitutional violation. *See Kustes*, 2013 WL 4776343, at *5.

In support of his *Monell* claims, Horn points the Court to the following allegations in his Amended Complaint: (1) Covington "directly encourages . . . the very type of

7

misconduct at issue by failing to adequately train, supervise . . . control . . . [and] punish" its officers (Doc. # 8 at ¶ 85); (2) governmental policymakers "exhibited indifference to the problem" (*Id.* at ¶ 86); and (3) supervisors in Covington failed to "supervise . . . thereby encouraging and/or permitting these employees and other defendants to engage in a reckless investigation, to coerce and fabricate false inculpatory evidence and to withhold exculpatory impeachment evidence" (*Id.* at ¶ 133).  Horn argues that these allegations "satisfy Rule 8's notice pleading standards for *Monell* claims." (Doc. # 70 at 6).  Case law from this circuit, however, demonstrates that Horn's complaint is insufficient to survive Covington's Rule 12(b)(6) motion to dismiss.

In *Hutchison*, the plaintiff alleged that a municipality "failed to provide adequate training to . . . officers about stopping vehicles and/or ordering passengers to step out of those vehicles in disregard of their disabilities or injuries."  685 F.Supp. 2d at 750.  The court granted the municipality's motion to dismiss, concluding that with "no additional factual support . . . .  Plaintiff's pleadings have 'stop[ped] short of the line between possibility and plausibility regarding municipal liability."  *Id.* at 751.

In *Vidal*, the plaintiff's compliant stated that a municipality "adopted policies, practices, or customs that allow . . . the use of excessive force"; "failed to instruct, supervise, control, and discipline [officers]"; and "lacked a proper policy, procedure, or custom . . . to instruct, train, [and] supervise [officers in] properly finding probable cause."  2014 WL 4418113, at *3-4.  The court held that the complaint failed to state a claim because it merely recited the legal requirements for *Monell* liability without further factual enhancement.  *Id.* at *4.

And in *Kustes*, the plaintiff alleged that a municipality "sanction[ed] the officers' unlawful conduct"; "negligently trained and/or supervised . . . officers"; and "failed to comply with policies and/or customs regarding the proper training and supervision of . . . officers." 2013 WL 4776343, at *4.  The court granted the defendant's motion to dismiss because "the plaintiff d[id] not state how the [defendant] did this" nor "allege any facts regarding what th[e] policies or customs were or how the [defendant] violated them."  *Id.*

Like the plaintiffs in *Hutchinson*, *Vidal*, and *Kustes*, Horn has not identified a specific Covington policy or custom that resulted in excessive force, a failure to intervene, or false arrest.  Indeed, he provides no facts or examples to support his statement that Covington failed to properly train officers in the use of force.  He alleges that Covington has failed to discipline officers for using improper force, and that due to a lack of training and supervision Covington officers have withheld, coerced, and fabricated evidence.  But he fails to cite a single prior instance or statistic in support of those claims.  *See Burgess*, 735 F.3d at 478 ("A failure-to-train claim . . . requires a showing of prior instances of unconstitutional conduct . . . . [A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims.") (quotations marks and citations omitted).  Because there are no factual allegations that would "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, the Court will grant Covington's motion to dismiss Horn's § 1983 claims.

### iii.    Section 1983 claims against Chief Jones in his individual capacity

Jones asserts that Horn has either failed to support his § 1983 claims with sufficient facts, or that he is entitled to qualified immunity.  Government officials have immunity from § 1983 civil liability "when performing discretionary duties so long as 'their conduct does not

9

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burgess*, 735 F.3d at 472 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Determining whether an official is entitled to qualified immunity involves a two-step inquiry: "(1) whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated, and if so, (2) whether that right was clearly established."  *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012).

### a.    Section 1983 excessive force and failure to intervene (Counts I and V)

Jones argues that Horn's excessive force and failure to intervene claims should be dismissed because there is "no assertion that [he] was physically present when Plaintiff was arrested on the evening of April 13, 2013."  (Doc. # 43 at 8, 11).  Were this true, dismissal may be appropriate.  However, Horn does allege that Jones was present at his arrest.  In his Amended Complaint, Horn includes Jones (in his individual capacity) among a group of officers that he labels the "Covington Defendants."  (Doc. # 8 at 2).  He then alleges that the Covington Defendants were the officers who came to the scene and arrested him.  (*Id.* at ¶¶ 40, 57).  While it seems unlikely that the police chief would respond to a situation like the one here, the Court must accept as true Horn's allegation that Jones was present.

Turning to the allegations supporting Horn's use of excessive force and failure to intervene claims, Horn contends that although he did not resist arrest, the "Covington Defendants" struck him in the back of his head, repeatedly kicked him, used a Taser on him, and dragged him across the ground until his hands were raw.  (*Id.* at ¶¶ 44-46, 49).  He maintains that the officers who did not actively participate stood by and watched this

beating.  (*Id.* at ¶ 47).  Horn states that he lost consciousness as a result of the Covington Defendants' actions and now suffers from a traumatic brain injury and post-concussion syndrome, among other ailments.  (*Id.* at ¶¶ 44, 53).

Jones challenges Horn's failure to specifically link him to one of these acts.  After stating that Officers Rodgers and Kelley were the ones who tackled him to the ground, Horn attributes the remaining actions to the "Covington Defendants" collectively.  At this stage of the case, that is sufficient.  Horn is not required in his Amended Complaint to give a blow-by-blow account, each time naming the individual officer responsible–especially when he suggests that he was laying on the ground and going in and out of consciousness. Naming the officers at the scene, describing the type of force used, and alleging that the officers collectively used that force is sufficient to state a claim against each individual officer and to put each officer on notice of the nature of the suit against him.  At the pleading stage, Horn need not make "detailed factual allegations" about which officer committed which act.  *Iqbal*, 556 U.S. at 678.  That burden is reserved for later stages of the litigation.

Jones argues in the alternative that even if the Court concludes that he did participate in the arrest, there are no facts showing that he "acted unreasonably under the circumstances."  (Doc. # 43 at 8).  This argument completely ignores the gravity of Horn's allegations.  If Jones was one of the officers at the scene and participated in the use of force described–which is what Horn pleads in his Amended Complaint–then the facts are more than sufficient for a jury to find that he acted unreasonably and therefore violated Horn's clearly established Fourth Amendment rights.  *See Aldini v. Johnson*, 609 F.3d 858, 866-67 (6th Cir. 2010) (holding that the Fourth Amendment's "reasonableness" standard

applies to excessive force claims brought by individuals who have been arrested without a warrant and have not yet had a probable cause hearing).  And if Jones was one of the officers who "stood by and watched" (Doc. # 8 at ¶ 47), then it is certainly plausible that he had an opportunity and means to prevent the harm but failed to take action, also in violation of Horn's Fourth Amendment rights.  *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  Under both scenarios, and until discovery shows otherwise, Jones is not entitled to qualified immunity on Horn's excessive force and failure to intervene claims.

### b.    Conspiracy (Count VI)

To prevail on a § 1983 civil conspiracy claim, a plaintiff must demonstrate that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff[] of [his] constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury."  *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quotation marks and citation omitted).

Jones argues that Horn has not pled facts to support a civil conspiracy claim.  In response, Horn points to the following allegations:

(1)    the "Covington Defendants . . . in conspiracy with one another . . . accused [him] of criminal activity . . . without any probable cause."  (Doc. # 8 at ¶ 96).

(2)    "Defendants reached an agreement amongst themselves to deprive [him] of his constitutional rights and to protect one another from liability," and "committed overt acts."  (*Id.* at ¶ 125-26).

(3)    "The Defendant officers subsequently charged [him] with numerous crimes in an effort to cover up their misconduct."  (*Id.* at ¶ 5).

Although some of these allegations are conclusory, they are supported by facts that describe a potential excessive use of force (*Id.* at ¶¶ 40-51), a subsequent arrest and indictment (*Id.* at ¶¶ 57, 58, 60, 65-66), and a dismissal of all charges (*Id.* at ¶ 60).  The Court agrees with Horn that based on the facts alleged in his Amended Complaint, it is plausible that Jones and the remaining officers agreed to arrest him to cover-up their alleged misconduct, not because they had probable cause.  Arresting an individual without probable cause violates that individual's clearly established constitutional rights, so Jones' motion to dismiss this claim is denied.  *See Robertson v. Lucas,* 753 F.3d 606, 618 (6th Cir. 2014).

### c.    Supervisor liability (Count VII)

Horn brings a supervisor liability claim against Jones for his failure to adequately oversee Horn's arrest.  Jones concedes that he is a supervisor (Doc. # 43 at 12), but argues that Horn has failed to show prior misconduct or demonstrate that he has failed to train Covington's police force.  Jones also maintains that he has qualified immunity.

 "A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (quotation marks and citations omitted).

As discussed *supra*, Horn alleges that Jones was at the scene, either used the force described or stood by and watched, and was one of the officers who conducted the arrest.

Thus, this is not a case where the constitutional violations were merely "brought to [Jones']

attention," and Horn is now attempting to hold Jones liable on the basis of respondeat

superior.  *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Rather, Horn has

pled that Jones, a supervisor, actively "participated" with the other officers in the beating

and arrest.  Accordingly, Jones is not entitled to qualified immunity at this stage of the case

and his motion to dismiss is denied.

### d.    Malicious prosecution (Count III)

A § 1983 malicious-prosecution claim, which is brought under the Fourth

Amendment, requires a plaintiff to show the following: (1) a criminal prosecution was

initiated against him and that the defendant, at a minimum, influenced the decision; (2)

there was a lack of probable cause for the criminal prosecution, (3) he suffered a

"deprivation of liberty . . . apart from the initial seizure"; and (4) the criminal proceeding was

resolved in his favor.  *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).  The "tort

of malicious prosecution is entirely distinct from that of false arrest  . . . ."  *Id.* at 308 (citing

*Wallace v. Kato*, 549 U.S. 384, 390 (2007)).  Jones asserts that Horn makes "no showing

as to what role [he] played in the institution of criminal charges."  (Doc. # 43 at 10).

To hold an arresting officer liable for malicious prosecution, a plaintiff must "present

some evidence that the impact of [the officer's actions] extended beyond [his] initial arrest,"

and "ultimately influenced [his] continued detention" or prosecution.  *Sykes*, 624 F.3d at

315-16 (citing case law holding that even if the officer is responsible for making the

arrest–absent an allegation of pressure, influence, or a misstatement by the officer–the

chain of causation is broken by a subsequent indictment or filing of information).  An officer

participates in a decision to prosecute when, for example, he or she testifies falsely at a preliminary hearing, or makes knowing misstatements to the prosecutor. *Id.* at 312-17.

Here, the chain of causation following Horn's initial arrest was broken by a grand jury indictment. (Doc. # 51-1). Nevertheless, and without citing to a specific allegation in the complaint, Horn argues that he "has sufficiently pled that Defendant Jones . . . contributed to the process of charging [him] with crimes that should never have been brought." (Doc. # 70 at 15). Horn does allege that the "Covington Defendants exerted influence to initiate . . . judicial proceedings," and "coerc[ed] and fabricate[d] . . . evidence." (Doc. # 8 at ¶¶ 57, 96, 133). However, Horn fails to support these naked assertions with factual allegations. For example, he does not state *how* the Covington Defendants exerted influence over the judicial proceedings, *who* they exerted influence over, or *how* and *what* evidence they fabricated or lied about.[2] Although Horn accuses Officer Rodgers of falsely testifying at the grand jury hearing that Horn's gun was loaded (*Id.* at ¶ 59), he pleads no facts to support an inference that Jones participated in the grand jury hearing or in some other way influenced the decision to prosecute. Accordingly, Jones' motion to dismiss this claim is granted.

### e.    Second Amendment retaliation (Count II)

A plaintiff may bring a § 1983 claim for "government actions . . . motivated in

---

[2] *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373-74 (6th Cir. 2011) (holding, in a § 1983 First Amendment retaliation claim, that "targeting anti-abortion organizations" and "encouraging the reporting of information" were conclusory allegations insufficient to state a claim because they did not describe the "location, manner [or] timing" of the government action); *Shepherd v. Sheldon*, No. 1:11-cv-127, 2011 WL 3608223, at *10 (N.D. Ohio Aug. 15, 2011) (granting judgment on the pleadings because the "plaintiffs do not allege sufficient facts supporting their conclusory allegation that the [defendants] 'fabricated evidence'").

substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394 (stating that these elements apply to retaliation claims in general, but will yield to variations in different contexts). Although § 1983 retaliation claims have traditionally been brought based on First Amendment activities, *see, e.g.*, *id.*, when "certain provisions of the Constitution define individual rights with which the government generally cannot interfere—actions taken pursuant to those rights are 'protected' by the Constitution," *Id.* at 387.

Horn alleges that the Covington Defendants physically attacked him because he was carrying a handgun. (Doc. # 8 at ¶¶ 90-91). According to Horn, this occurred when he was outside of his home. (*Id.* at ¶¶ 40-41). In his Rule 12(b)(6) motion, Jones does not argue that Horn has failed to state the elements of a § 1983 retaliation claim. Rather, Jones suggests that he is entitled to qualified immunity because Second Amendment retaliation "is a claim of first impression," and "is therefore not clearly established law." (Doc. # 43 at 9); *see Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (analyzing qualified immunity as a separate inquiry from whether the plaintiff stated the elements for a § 1983 retaliation claim).

Horn points to no cases where this specific claim has been recognized, and the Court is aware of none. Although a court "need not find a case in which 'the very action in

question has previously been held unlawful . . . in the light of pre-existing law[,] the unlawfulness must be apparent.'" *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  A right is clearly established only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  This evaluation "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* (quoting *Saucier*, 533 U.S. at 201).  Therefore, the question before the Court is whether a reasonable officer would know, in light of pre-existing law, that retaliating against an individual for carrying a firearm outside of his home violates that individual's Second Amendment rights.

In *District of Columbia v. Heller*, the United States Supreme Court held that the Second Amendment codified a pre-existing "individual right to keep and bear arms" upon "responsible, law-abiding citizens," and that the "central component" of the right is self-defense.  554 U.S. 570, 581, 592, 635 (2008).  As a result, the Court concluded that "a ban on handgun possession in the home violates the Second Amendment."  *Id.* at 635.  And in *McDonald v. City of Chicago*, the Court held "that the Second Amendment right is fully applicable to the States."  561 U.S. 742, 750 (2010).  Yet, here the Court is concerned with an individual exercising his right to carry arms *outside* of his home, an issue *Heller* and *McDonald* did not address.  *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1150 (9th Cir. 2014) ("[N]either *Heller* nor *McDonald* speaks explicitly or precisely to the scope of the Second Amendment right outside the home or to what it takes to 'infringe' it.").

17

As the Sixth Circuit recently explained: "[t]he Supreme Court has not fleshed out the extent of the right protected by the Second Amendment." *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775 F.3d 308, 316 (6th Cir. 2014).  Indeed, while the weight of authority recognizes some constitutional right to bear arms outside the home, courts have been reluctant to expressly declare and define that right.  *See, e.g., Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013) ("[W]e decline to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home . . . ."); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) ("Although the Supreme Court's cases applying the Second Amendment have arisen only in connection with prohibitions on the possession of firearms in the home, the Court's analysis suggests . . . that the Amendment must have some application in the very different context of the public possession of firearms."); *but see Peruta*, 742 F.3d at 1167 (9th Cir. 2014) (affirmatively declaring that "carrying a gun outside the home for self-defense comes within the meaning of 'bear[ing] Arms.'").

The Court agrees that there is some right to carry a firearm outside the home. (Particularly for the reasons expressed in *Peruta*, 742 F.3d at 1156 (holding that there is a right to carry a gun outside the home after analyzing, like the *Heller* Court, the Second Amendment's text and the public's original understanding of the text after its enactment)). Nevertheless, Horn's claim still fails because–as the above case law makes clear–that issue remains far from settled and is certainly not clearly established law.  Because a reasonable officer would not know, based on pre-existing law, that an individual has a Second Amendment right to carry a gun *outside* his home, this claim is dismissed on qualified immunity grounds.  Although Horn alleges that he had a concealed carry license,

18

an infringement on those rights cannot form the basis for a § 1983 claim.  *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995)  ("While the states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under § 1983.").

### iv.    State-law claims against Jones in his official capacity and individually

It is not clear from Horn's Amended Complaint nor the briefing whether he brings his state-law claims against Jones in his official capacity.  To the extent he does, they are functionally claims against the City of Covington.  Because Horn has asserted a respondeat superior claim against Covington, any state-law official capacity claims against Jones are dismissed as redundant.  *W. v. City of Paris, Ky.*, No. 13-CV-193-JMH, 2015 WL 541283, at *1 (E.D. Ky. Feb. 10, 2015); *see Thorpe ex rel. D.T.*, 932 F. Supp. 2d at 802; *Graham*, 473 U.S. at 167 n. 14.

Under Kentucky law, public employees sued in their individual capacities are entitled to qualified immunity for negligent performance of:  "(1) discretionary acts or functions  . . . (2) in good faith; and (3) within the scope of the employee's authority."  *T.S. v. Doe*, 742 F.3d 632, 641 (6th Cir. 2014) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).

### a.    State-law malicious prosecution (Count IX)

Jones moves to dismiss Horn's state-law malicious prosecution claim on two grounds: (1) Horn has failed to state a claim, and (2) he is entitled qualified immunity. Under Kentucky law, a plaintiff must prove the following elements to prevail on a malicious prosecution claim against an officer:

(1) the institution or continuation of original judicial proceedings . . . (2) by, or at the instance, of the [officer], (3) the termination of such proceedings in

19

> [plaintiff's] favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceedings, and (6) the suffering of damage as a result of the proceeding.

*Phat's Bar & Grill v. Louisville Jefferson Cnty. Metro Gov't*, 918 F. Supp. 2d 654, 664 (W.D. Ky. 2013) (citing *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky.1981)).  The Court held *supra* that Horn failed to adequately plead his § 1983 malicious prosecution claim because there are no facts that indicate Jones influenced Horn's detention beyond his initial arrest. However, a separate inquiry is necessary here because the standard for "instituting judicial proceedings" is different under Kentucky law.

In Kentucky, "the initiation of a criminal proceeding generally occurs upon either the actual arrest of a person, the return of an indictment, the issuance of an arrest warrant, or a summons to appear and answer criminal charges." *Id.* at 665 (citing *Johnson v. St. Claire Med. Ctr., Inc.*, No. 2002-ca-001385-MR, 2003 WL 22149386, at *2 (Ky. Ct. App. Sept. 19, 2003)).  For example, in *Meogrossi v. Aubrey*, the court held that an officer instituted criminal proceedings by issuing a criminal citation. No. 3:09cv-00301-JDM, 2011 WL 1235063, at *15 (W.D. Ky. Mar. 31, 2011).  And in *Martin v. Coyt*, merely arresting a plaintiff constituted instituting judicial proceedings, notwithstanding the fact that no criminal charges were ever filed.  No. 1:10-cv-00176, 2013 WL 1187940, at *6 (W.D. Ky. Mar. 21, 2013).  Based on these cases, Horn's allegation that Jones arrested him is sufficient to meet the first element of malicious prosecution.  (Doc. # 8 at ¶¶ 5, 65-66).

Next, Jones argues that Horn has not adequately pled a lack of probable cause or that Jones acted with malice.  These two arguments can be considered together because "malice can be inferred from a lack of probable cause." *Phat's Bar & Grill*, 918 F.Supp. at 665 (citing *Massey v. McKinley*, 690 S.W.2d 131, 134 (Ky. 1985)).  Horn maintains that he

is innocent, that there was no probable cause for his arrest, and that the charges against him were ultimately dismissed.  (Doc. # 8 at ¶¶ 58, 60, 64-66).  Proving (or in this case pleading) a negative is a difficult task, and whether there is probable cause is an inherently fact-intensive inquiry.  Accordingly, based on the allegations in Horn's Amended Complaint, it is plausible that he could prevail on the merits of his state-law malicious prosecution claim.

And at this stage, Jones is not entitled to qualified immunity.  An officer is entitled to qualified immunity only if he performs his discretionary duties in "good faith."  *Yanero*, 65 S.W.3d at 522.  "Bad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . . or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive."  *Id.* at 523.  Here, Horn alleges that Jones and the other officers "charged [him] with numerous crimes in an effort to cover up their misconduct."  (Doc. # 8 at ¶ 5).  If Horn ultimately proves that allegation to a jury, then the jury could reasonably find that Jones acted "with a corrupt motive" when he made the decision to arrest Horn.  Thus, at this stage of the case, Jones in not entitled to qualified immunity.

### b.   IIED & NIED

As Jones correctly argues, a plaintiff cannot bring an IIED claim when he has redress for emotional damages through a traditional tort, unless "the [defendant's] conduct was . . . intended only to cause extreme emotional distress in the victim."  *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012) (quoting *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App.1993)).  In other words, the intent to cause emotional distress must

21

be the "gravamen of the tort." *Id.* This recognizes that IIED is a "gap-filler," and that "[t]here can be only one recovery for emotional distress on the same acts." *Id.* at 583.

Horn can recover emotional damages on his § 1983 and state-law malicious prosecution claims. *Chatman v. Slagle*, 107 F.3d 380, 384-85 (6th Cir. 1997); *Raine v. Drasin*, 621 S.W.2d 895, 900 (Ky. 1981). Therefore, his IIED claim can survive only if the facts in the Amended Complaint make it plausible that Jones acted solely to inflict emotional distress. The gravamen of the Amended Complaint, as it relates to Officer Jones, is the use of excessive force and then an arrest to cover-up for that misconduct. Although a plaintiff can plead alternative theories of relief, the acts alleged are purely violent in nature, there is no indication that Jones knew Horn before this incident, and there are no facts that lead to a plausible inference that Jones was motivated by a desire to humiliate or embarrass Horn. Accordingly, Jones motion to dismiss Horn's IIED claim is granted. *See Johnson v. Ky-.Cnty. of Butler*, No. 1:12CV-37-JHM, 2014 WL 4129497, at *12 (W.D. Ky. Aug. 18, 2014) (dismissing a plaintiff's IIED claim in a use-of-excessive-force case because the plaintiff's emotional injuries were "the same as those from the alleged assault and battery").

Courts in this district have found the same reasoning applicable to NIED claims. *See Jackson v. Steele*, No. 11-CV-72-DLB-EBA, 2014 WL 2801337, at *13 (E.D. Ky. June 19, 2014); *Scherzinger v. Bolton*, No. 3:11–CV–11–H, 2013 WL 3166163, at *10 (W.D. Ky. June 20, 2013); *Woosley v. City of Paris*, 591 F.Supp.2d 913, 923 (E.D. Ky. 2008). Because Horn has traditional claims upon which he can recover for emotional distress, his NIED fails as a matter of law.

22

### v.    Respondeat superior claim against Covington

Covington argues that Horn's state-law respondeat superior claim should be dismissed because Horn has no viable state-law claim against Jones.  (Doc. # 43 at 15). However, the Court has denied Jones' motion to dismiss Horn's state-law malicious prosecution claim.  Because Covington's sole argument for dismissing Horn's respondeat superior claim fails, so does its motion to dismiss.  *See Wilkerson v. City of Frankfort*, Ky., No. CIV.A. 3:08-12-DCR, 2009 WL 1033828, at *10 (E.D. Ky. Apr. 16, 2009) (recognizing that "the City of Frankfort can be vicariously liable for any torts committed by [one of its officers]").

### C.    The Kenton County Defendants and Southern Health Partners, Inc.

Horn brings § 1983 and state-law claims against a group of defendants he labels the Kenton County Defendants: Kenton County, Terry Carl (individually and in his official capacity as jailer of the KCDC), Captain Smith, Correctional Officer Bishop, and unknown employees of the KCDC.   His claims against the Kenton County Defendants stem from his allegations that he was denied proper medical treatment during his five days of confinement at the KCDC.  (Doc. # 8 Counts IV, V, VI, X, XII).  Horn brings these same claims against Southern Heath Partners, Inc. (SHP).  SHP is contracted by Kenton County to provide medical training to KCDC personnel and medical care to KCDC inmates.  (Doc. # 8 at ¶ 26).  Both defendants argue that Horn failed to file within the applicable statute of limitations.

Horn was released from the KCDC on April 17, 2013.  (Doc. # 66-3).  He filed his original *pro se* Complaint, which alleged improper medical care (among other claims), on April 11, 2014.  (Doc. # 1).  In his *pro se* Complaint, he did not name the Kenton County

23

Defendants or SHP, instead bringing suit against the City of Covington, Officer Greg Rodgers, and John Does. On August 26, 2014, Horn filed an Amended Complaint, through counsel, adding the Kenton County Defendants and SHP. (Doc. # 8). Two days later, the Court granted Horn's motion for an extension of time to complete service, giving him until September 28, 2014. (Doc. # 13). Horn served his Amended Complaint on Kenton County on September 11, 2014, and served Terry Carl the following day. (Docs. # 24, 26). SHP filed an answer to Horn's Amended Complaint on September 17, 2014. (Doc. # 23).

The Kenton County Defendants have filed a motion to dismiss and SHP has filed for summary judgment. Both argue that the § 1983 claims should be dismissed because Horn filed his Amended Complaint after the applicable statute of limitations, which in Kentucky is one year. *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009) (citing Ky. Rev. Stat. § 413.140(1)(a)). Horn maintains that his claims are timely because the statute of limitations was tolled due to unsound mind, and in the alternative asserts that his claims relate back to the filing of his *pro se* Complaint.

### i.    There is a dispute of material fact whether the statute of limitations was tolled due to unsound mind

Ky. Rev. Stat. § 413.170(1) tolls the statute of limitations when a person is of "unsound mind." Whether a plaintiff suffers from unsound mind "is a question of fact and does not depend upon a legal adjudication following a sanity inquest." *Carter v. Huffman*, 262 S.W.2d 690, 692 (Ky. 1953). The statute of limitations can be tolled when the plaintiff's unsound mind results from the incident giving rise to the complaint. *Powell v. Jacor Commc'ns Corporate*, 320 F.3d 599, 604 (6th Cir. 2003).

24

For tolling purposes, a person is of unsound mind when he is "incapable of managing of his own affairs." *Se. Ky. Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988). SHP suggests that the unsound mind inquiry should focus on a person's ability to understand his legal rights and responsibilities, citing the Sixth Circuit's decision in *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 844-45 (6th Cir. 2015) (applying Tennessee's prior version of its tolling statute, which permitted tolling if a person was of "unsound mind," but now requires a plaintiff to be "adjudicated incompetent," Tenn. Code Ann. § 28–1–106). In *Johnson*, the Sixth Circuit noted that Tennessee's test for unsound mind was "whether a person could know or understand his or her legal rights sufficiently well to manage his or her personal affairs." *Id.* at 845 (citing *Sherrill v. Souder*, 325 S.W.3d 584, 601 (Tenn. 2010) (quoting 54 C.J.S. *Limitations of Actions* § 172 (2010))). This test focuses on an individual's mental capacity, not his physical infirmities. *Id.* (citing *Sherrill*, 325 S.W. 3d at 600).

The Kentucky Supreme Court has yet to interpret its tolling statute so narrowly. Yet, it has provided guidance on how a court should determine whether a person is of unsound mind: "[a] person may be of unsound mind when, on account of any infirmity or weight of years, he has become so imbecile as to render him incompetent to manage his estate, or to understand the subject of a contract." *Stair v. Gilbert*, 272 S.W. 732, 734 (Ky. 1925). The court's reference to a person's ability to manage his *estate* and understand a *contract* appears to sharpen the focus on a person's mental capacity; specifically, his ability to comprehend and take care of discrete subject matters. Based on persuasive authority, the language in *Stair*, and the purpose behind tolling, the Court agrees that the Kentucky Supreme Court would interpret "unsound mind" to refer to a person's ability to understand

25

and manage his *legal* affairs, not just his day-to-day life in a more general sense.  That being said, a person's ability to perform simple day-to-day tasks is still relevant, as it can shed light on whether he is capable of handling more complicated legal matters.

As another threshold argument, SHP suggests that Kentucky's tolling statute does not apply to § 1983 actions.  That argument ignores *Green v. Floyd County, Kentucky*, 803 F. Supp. 2d 652, 654 (E.D. Ky. 2011) (applying Ky. Rev. Stat. § 413.170(1) to a § 1983 action), and was made prior to the Sixth Circuit's decision in *Johnson*, 777 F.3d at 845 (holding that Tennessee's tolling statute applies to a § 1983 action).  Applying Kentucky's tolling statute is especially appropriate here, since it governs the section of the code (Ky. Rev Stat. § 413.140) that creates the one-year statute of limitations for § 1983 actions.  Ky. Rev. Stat. § 413.170(1); *Bonner*, 564 F.3d at 430-31.

Switching to the Kenton County Defendants, they have brought a motion to dismiss, so the Court looks to Horn's Amended Complaint to see if the facts alleged could lead to a plausible showing of unsound mind.  Horn states that as a result of this incident he has suffered a traumatic brain injury, post-concussion syndrome, and memory loss.  (Doc. # 8 at ¶ 53).  He has received treatment for these injuries from the "Traumatic Brain Injury Unit at the University of Cincinnati," and at the present time is unable to perform even the most basic of tasks.  (*Id.* at ¶¶ 35, 55).  The Kenton County Defendants contend that Horn cannot be of unsound mound because he engaged in the factual development of his case and timely filed his *pro se* Complaint.  However, to reach that conclusion the Court must draw inferences in the moving party's favor, which it cannot do at the motion to dismiss stage. *Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 418 (6th Cir. 2014).  The Court must accept Horn's factual allegations as true, and in doing so,

26

concludes that it is plausible the statute of limitations was tolled due to unsound mind.

SHP contends that there is no evidence to support tolling the statute of limitations. Because SHP raises this argument in a motion for summary judgment, Horn has the burden of pointing to evidence in the record upon which a reasonable juror could find that he has suffered from unsound mind. *Liberty Lobby, Inc.*, 477 U.S. at 250. Horn has met this burden.

First, Dr. Laura Pedelty, who reviewed Horn's medical records, opines that he suffered a traumatic brain injury in April 2013, and states that such an injury can prevent someone from managing his daily affairs. (Doc. # 97-2). Indeed, the medical records indicate post-concussion syndrome, traumatic brain injury, and memory loss. (*Id.* at Ex. 6). Horn also attaches affidavits from two acquaintances who interacted with him both before and after his arrest and who state that he has suffered from "memory issues"; has had "trouble communicating [and] concentrating"; "seems lost"; and has "mental functioning [that is] noticeably reduced." (*Id.* at Exs. 3, 4). They suggest that these symptoms began after Horn's arrest and have lasted for "at least a year." (*Id.*). All this corroborates Horn's assertion that he can no longer perform the essentials of his daily life, such as paying bills, grocery shopping, and managing his property. (*Id.* at Ex. 1). A reasonable juror could certainly find that an individual with a traumatic brain injury–who has trouble with memory, concentration, and simply daily tasks–is unable to understand his legal rights and responsibilities.

SHP presents several arguments in reply, none of which persuade the Court that summary judgment is appropriate. First, SHP criticizes Horn for not attaching the above evidence to his November 2014 response to the Kenton County Defendants' motion to

27

dismiss.  Such criticism is unwarranted because motions to dismiss test the sufficiency of the pleadings, not the evidence; therefore, Horn was not required to attach evidence in response to the Kenton County Defendant's Rule 12(b)(6) motion.  Next, SHP suggests that Horn's ability to file a *pro se* complaint "unequivocally shows" that he was aware of his legal rights.  (Doc. # 98 at 4).  However, the relevant date for tolling purposes is when Horn's cause of action accrued, not when he filed his *pro se* Complaint.  *Powell*, 320 F.3d at 604 ("The fact that [the plaintiff] may or may not have been of unsound mind when she filed her *pro se* complaint nearly a year [after the cause of action accrued] is therefore irrelevant."). SHP then references Horn's ability to appear and answer questions at his criminal hearing. But as another court in this district has noted: "it would appear that a person could be of unsound mind for the purposes of the tolling statute yet competent to stand trial."  *Gray v. Lexington-Fayette Urban Cnty. Gov't*, No. 5:13-045-DCR, 2013 WL 3322609, at *7 (E.D. Ky. July 1, 2013).  SHP also points out that Dr. Pedelty is a non-treating physician who based her opinion on medical records from June 2014.  (Doc. # 98 at 4-6).  Yet, the weight given to Dr. Pedelty's testimony must be determined by a jury, not the Court.

Finally, SHP argues that there is no proof Horn was of unsound mind on April 13, 2014.  (Doc. # 98 at 5-6).  That date, however, is irrelevant.  Under the tolling statute, Horn has one year after the "removal of the disability" to bring his § 1983 claims.  Ky. Rev. Stat. § 413.170(1).  Horn's alleged injuries and lack of medical care occurred between April 13, 2013 and April 17, 2013 (which is the earliest his claims against SHP could have accrued). Accordingly, Horn will have the burden at trial of proving that he was of unsound mind on April 17, 2013, and that this disability lasted until at least August 26, 2013 (one year before he filed his Amended Complaint).  If SHP intended to argue that there is no evidence Horn

28

was of unsound mind on April 17, 2013, such an argument is contradicted by Horn's acquaintances, who affirm that this is precisely when his mental functioning deteriorated. (Doc. # 97-3 at ¶ 6; Ex. 4 at ¶ 6). Because there is an issue of fact whether the statute of limitations was tolled due to unsound mind, SHP's motion for summary judgment on Horn's § 1983 claim is denied.

### ii. Horn's denial of medical care claims against the Kenton County Defendants and SHP relate back to his original complaint; his failure to intervene and conspiracy claims do not relate back

Under Federal Rule of Civil Procedure 15(c),[3] an amendment to a pleading relates back to the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (I) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The Kenton County Defendants and SHP raise the following arguments as to why Rule 15(c) does not apply: (1) the claims against them in the Amended Complaint do not relate back to the same occurrence in Horn's *pro se* Complaint; (2) Horn has added them as new parties, (3) they had no notice of the original complaint within the time for service,

---

3) Although Kentucky state law provides the statute of limitations for the § 1983 and pendent state law claims, Federal Rule of Civil Procedure 15(c) governs the relation back analysis. *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 747-48 (E.D. Ky. 2011).

and (4) they had no reason to believe their omission from the original complaint was due to a mistake. The Court will address these arguments in order.

First, for purposes of Rule 15(c), a claim arises out of the same "conduct, transaction, or occurrence" when a defendant has "been placed on notice that he could be called to answer for the allegations in the amended pleading"; or, in other words, "the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the *amplification* of the allegations of the original complaint in the amended one." *Hall v. Spencer Cnty., Ky.*, 583 F.3d 930, 934 (6th Cir. 2009) (internal quotations and citations omitted) (emphasis added). Such an interpretation recognizes that "the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.' " *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000) (internal quotations and citations omitted).

SHP argues that the claims in Horn's Amended Complaint do not arise out of the same occurrence alleged in Horn's *pro se* Complaint. SHP notes that in Horn's *pro se* Complaint he only describes the facts surrounding his initial arrest. (Doc. # 98 at 7-8 citing Doc. # 1). Although Horn does not discuss the events at the KCDC in his *pro se* Complaint, he does allege a failure to provide medical care and describes the circumstances *leading up to* his confinement, including being knocked unconscious. Horn's arrest and five days of confinement at the KCDC involve one *continuous* sequence of events; thus, they are causally and temporally related. Because SHP should not be surprised that Horn later amended his complaint to include the medical care he received *during* confinement, the Court finds that Horn's claims against the Kenton County Defendants and SHP are part of

30

the same occurrence he sets out in his *pro se* Complaint.

Second, the Kenton County Defendants and SHP correctly argue that Rule 15(c) does not apply when a plaintiff *adds* a new party to an existing claim.  (Doc. # 66-1 at 7 citing *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010)); (Doc. # 98).  Since Horn still maintains his § 1983 failure to intervene (Count V) and conspiracy (Count VI) claims against the Covington Defendants, those claims do not relate back.  However, because Horn no longer brings a denial of medical care claim (Count IV) against the Covington Defendants, that claim does relate back.

Rule 15(c) applies when a plaintiff "sues party B instead of party A" because he "misunderstand[s] the roles that parties A and party B played in the 'conduct, transaction, or occurrence' giving rise to h[is] claim."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010); *see also DeBois v. Pickoff,* No. 3:09CV230, 2011 WL 1233665, at *10 (S.D. Ohio Mar. 28, 2011) (stating that Sixth Circuit courts "have allowed relation back where a new party is substituted for an old one . . . .").  With Horn's denial of medical care claim, he did not *add* the Kenton County Defendants and SHP; rather, he *substituted* them in place of the Covington Defendants.  Indeed, Horn no longer names the Covington Defendants in his denial of medical care claim, and the factual allegations relate solely to Horn's time at the KCDC.  (*See* doc. # 8 ¶¶ 65-80, 100-05).

Contrary to the Kenton County Defendants and SHP's suggestion, Horn did not substitute them for the John Doe Defendants.  If he had, Rule 15(c) would not apply.  *Smith v. City of Akron,* 476 F. App'x 67, 69 (6th Cir. 2010).  Although Horn did name John Doe officers in his *pro se* Complaint, drawing all inferences in Horn's favor–which is proper given both the procedural posture of this case and Rule 15's purpose–the Court finds that

31

he substituted the Kenton County Defendants and SHP for the City of Covington and Officer Rodgers, not the John Does.

Third, the Kenton County Defendants argue that they did not have notice of this action within the appropriate time.  (Doc. # 88 at 6).  Rule 15(c) requires that a defendant receive notice of the action "within the period provided by Rule 4(m) for serving the summons and complaint."  Here, Horn served Kenton County and Terry Carl with his Amended Complaint not later than September 12, 2014, which was before the September 28, 2014 Rule 4(m) deadline set by the Court.  (Docs. # 13, 24, 26).  Since the same attorney represents all the Kenton County Defendants, they received constructive notice of this action within the Rule 4(m) period.  *See Ham v. Sterling Emergency Servs. of the Midwest, Inc.*, 575 F. App'x 610, 617-18 (6th Cir. 2014).

Finally, the Kenton County Defendants and SHP assert that relation back is not appropriate because they had no reason to know that Horn made a mistake when he did not name them in his *pro se* Complaint.  As the United States Supreme Court recently explained, the relevant inquiry is whether the Kenton County Defendants and SHP "knew or should have known during the Rule 4(m) period" that Horn "made a mistake regarding the proper party's identity."  *Krupski*, 560 U.S. at 548.  A mistake is an "error, misconception or misunderstanding; an erroneous belief."  *Id.*

Upon reading the Amended Complaint (which the Kenton County Defendants and SHP received prior to the Rule 4(m) deadline), the Kenton County Defendants and SHP should have known that Horn–proceeding *pro se*–made an error when he originally brought his denial of medical care claim against the Covington Defendants.  Because the factual allegations in the Amended Complaint revolve entirely around Horn's time at the KCDC, the

Kenton County Defendants and SHP could not reasonably have believed that Horn made a "deliberate and informed decision" not to name them in his *pro se* Complaint. *Id.* at 552. The only reasonable inference is that Horn had a misunderstanding about what parties were responsible for his medical care while in detention, and that after obtaining counsel, corrected his mistake and named the correct parties. All the requirements for Rule 15(c) having been met, Horn's denial of medical care claim in Count IV relates back to the filing of his *pro se* Complaint.

In conclusion, there is a genuine dispute of material fact whether the statute of limitations for Horn's § 1983 claims was tolled due to unsound mind. If a finder of fact ultimately determines that the statute of limitations was not tolled, Horn's § 1983 denial of medical care claim against the Kenton County Defendants and SHP (Count IV) would still be timely because it relates back to the filing of his *pro se* complaint; however, the remaining § 1983 claims would be outside the one-year limitations period.

### iii.   State-law claims against the Kenton County Defendants and SHP

The Kenton County Defendants suggest that Horn's state-law claims should be dismissed on statute of limitations grounds. (Docs. # 66, 88). The Court, however, declines to recognize this argument because they cite no case law nor statute in support. *See Campbell v. Grand Trunk W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) ("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

33

The Kenton County Defendants also raise a sovereign immunity defense in a footnote.  (Doc. # 66-1 at 3 n.3).  Although they fail to explain which particular defendants this doctrine applies to and why, the Court will conduct its own analysis because sovereign immunity "can only be waived by the General Assembly."  *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004).

"Kentucky counties are cloaked with sovereign immunity . . . by virtue of [their] status as an arm or political subdivision of the Commonwealth."  *Id.*  Since Horn's claims against Terry Carl in his official capacity and the KCDC are really claims against Kenton County, these defendants are afforded the same immunity as Kenton County.  *Estate of Goodin v. Knox Cnty., Ky.*, No. CIV. 12-18-GFVT, 2012 WL 1571308, at *2 (E.D. Ky. May 3, 2012) (holding that the Knox County Detention Center and the county jailer in his official capacity were entitled to the same sovereign immunity as the county); *Webb v. Jessamine County Fiscal Court*, 802 F.Supp. 2d 870, 886–87 (E.D.Ky. 2011) (same with respect to the Jessamine County Detention Center and the jailer in his official capacity); *Yanero*, 65 S.W.3d at 518 ("The absolute immunity from suit afforded to the state also extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought.").  The Kentucky Generally Assembly has not waived "[i]mmunity with respect to the care and keeping of inmates."  *Id.*  Therefore, Horn's state-law claims against Kenton County, the KCDC, and Terry Carl in his official capacity are dismissed.

Horn also brings an IIED claim against Terry Carl, Captain Smith, Correctional Officer Bishop, and unknown employees of the KCDC in their individual capacities.  "When sued in their individual capacities, public officers and employees enjoy only qualified official

immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment."  *Yanero*, 65 S.W.3d at 522.  "Qualified official immunity is an affirmative defense that must be specifically pled."  *Id.*  The individual defendants have not asserted that they are entitled to qualified immunity, which means Horn has not had an opportunity to respond to such an argument.  Accordingly, their motion to dismiss the state-law claims is denied.

Turning to SHP, it argues that Horn's IIED claim should be dismissed because Horn's injuries stem from SHP's alleged failure to provide medical care, not from actions intended to inflict emotional distress.  (Doc. # 87-1 at 4).  The Court found this argument well-taken *supra* and does so here as well.  Horn points to no evidence that suggests SHP acted solely to inflict emotional distress.  Therefore, SHP's motion for summary judgment on Horn's IIED claim is granted.  *Childers*, 367 S.W.3d at 582.  Because that leaves no underlying state-law tort claim against SHP, Horn's respondeat superior claim is also dismissed.  *Jackson*, 2014 WL 2801337, at *13 ("Liability under a theory of respondeat superior can only exist when there is an underlying tort.").

**D.     The Court does not have supplemental jurisdiction over Horn's defamation claim against Defendant Frank Trusty**

Horn's only claim against Trusty is a state-law defamation claim.  The facts in the complaint are as follows: Trusty appeared on behalf of the Commonwealth at one of Horn's hearings.  After the hearing, Trusty verbally attacked Horn in front of Horn's family and friends.  Specifically, he yelled across the courtroom to Horn's attorney: "When are you going to get rid of that fag?"  Horn alleges that Trusty falsely accused him of being gay, and that this has damaged his reputation and caused him mental anguish and humiliation.

35

(Doc. # 8 at ¶¶ 61-64, 138-41).

Trusty has filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  Horn's defamation claim does not present a federal question, and he and Trusty are both citizens of Kentucky (Doc. # 8 at ¶¶ 11 ,14).  Therefore, if this Court has jurisdiction, it is only supplemental under 28 U.S.C. § 1367.  Section 1367(a) provides:

> "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

For claims to form part of the same case or controversy, they must "derive from a common nucleus of operative facts,"  *Hucul Advertising, LLC v. Charter Township Of Gaines*, 748 F.3d 273, 280 (6th Cir. 2014), such that a plaintiff "would ordinarily be expected to try all of them in one judicial proceeding," *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

The hearing where Trusty allegedly made the statement comprising Horn's defamation claim is causally related to the § 1983 claims in the sense that, but for Horn's arrest, the hearing would not have occurred.  But beyond that, the defamation claim and the remaining claims have *no* "operative facts" in common.  *See Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 998-99 (E.D. Mich. 1996) (holding there was no supplemental jurisdiction, notwithstanding a "but for" relationship between the federal and state-law claims, because "two separate factual inquires are required in order to litigate the federal versus the state claims").  The defamation claim has to do with a single statement

36

made at least one week after Horn was released from the KCDC;[4] the remaining claims

have to do with the officers' decision to arrest, the use of force during the arrest, and Horn's

treatment during confinement.  Indeed, the evidence presented in support and defense of

Horn's defamation claim (whether Trusty's statement is defamatory, was published, and

caused injury to Horn's reputation) will be mutually exclusive from the proof introduced on

the remaining claims (whether there was probable cause for the arrest, the force used,

Horn's medical treatment at KCDC, his medical condition after his arrest and confinement).

Because they have no evidence in common, Horn's ability to prevail on his § 1983 claims

will have no bearing on his ability to prove his defamation claim.  *See id.* (concluding that

claims did not derive from a common nucleus of operative fact because, among other

reasons, "[p]laintiff's state claims can be resolved without any consideration whatsoever of

[his federal claims]").

Horn argues that judicial economy, fairness, and convenience compel this Court to

retain jurisdiction over his defamation claim.  However, a court can only weigh these

considerations *after* it is convinced that it has supplemental jurisdiction, and typically will

only do so when it is trying to determine whether to *retain* jurisdiction after dismissing all

claims over which it has original jurisdiction.  *See* 28 U.S.C. 1367(c)(3); *Harper v.*

*AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).  If the state-law claim does not

form part of the same case or controversy as the claims over which the court has original

jurisdiction, then supplemental jurisdiction will not lie–no matter how fair or convenient it

---

4)  The first hearing in Horn's criminal case took place on April 25, 2013.  Thus, the earliest Trusty
could have made the statement was eight days after he was released from the KCDC (April 17,
2013).

might be for the litigants.  *Gibbs*, 383 U.S. at 725; 28 U.S.C. §1367(a).

In sum, were this case to proceed to trial, the jury would essentially be hearing two different cases and groups of evidence: (1) that which relates to Horn's arrest and care at KCDC, and (2) Horn's defamation claim.  Because Horn's defamation claim does not present a federal question under § 1331 or diversity of citizenship under § 1332, and since it does not share a common nucleus of operative facts with those claims over which the Court does have jurisdiction, Trusty's Rule 12(b)(1) motion to dismiss is granted.  *See Soliday v. Miami Cnty., Ohio*, 55 F.3d 1158, 1165 (6th Cir. 1995) (affirming the district court's decision not to exercise supplemental jurisdiction over a plaintiff's breach of contract claim against a jail's medical provider because it did not share a common nucleus of operative facts with the plaintiff's § 1983 denial of medical care claims); *Harris v. City of Circleville*, No. 2:04 CV 1051, 2005 WL 1793841, at *3 (S.D. Ohio July 27, 2005) (concluding there was no supplemental jurisdiction over a plaintiff's state-law negligence claim in a § 1983 false imprisonment and excessive use of force case because "the facts [the plaintiff] must set out in order to prove his negligence claim against [the medical provider] are entirely different from the facts he must set out to prove his § 1983 case against the police officers.").

### III.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED THAT**:

(1)  The City of Covington's Motion to Dismiss (Doc. # 43) **all § 1983 claims is granted**.  The City of Covington's Motion to Dismiss **Count XII** (respondeat superior) is **denied**.

38

(2)  Michael Spike Jones' Motion to Dismiss (Doc. # 43) all claims **in his official capacity is granted**.   Michael Spike Jones' Motion to Dismiss **Count II** (Second Amendment retaliation), **Count III** (§ 1983 malicious prosecution), **Count X** (intentional infliction of emotional distress), and **Count XI** (negligent infliction of emotional distress) **in his individual capacity is granted**.  Michael Spike Jones' Motion to Dismiss **Count I** (use of excessive force), **Count V** (failure to intervene), **Count VI** (conspiracy), **Count VII** (failure to supervise), and **Count IX** (state-law malicious prosecution) **in his individual capacity is denied**.

(3)  The Kenton County Defendants' Motion to Dismiss (Doc. # 66) Horn's **§ 1983 claims** (Counts IV, V, VI) **is denied**.  Kenton County, the Kenton County Detention Center, and Terry Carl's (in his official capacity) Motion to Dismiss (Doc. # 66) **Count X** (intentional infliction of emotional distress) and **Count XII** (respondeat superior) **is granted.**  Terry Carl (in his individual capacity), Captain Smith, Correctional Officer Bishop, and unknown employees of the KCDC's Motion to Dismiss (Doc. # 66) **Count X** (intentional infliction of emotional distress) **is denied**.

.    (4)  Southern Health Partner Inc.'s Motion for Summary Judgment (Doc. # 87) on Horn's **§ 1983 claims** (Count IV, V, VI) **is denied**.  Southern Health Partner Inc.'s Motion for Summary Judgment on **Count X** (intentional infliction of emotional distress) and **Count XII** (respondeat superior) **is granted**.

(5)  Frank Trusty's Motion to Dismiss (Doc. # 51) **Count VIII** (defamation) **is granted**.

This 1st day of July, 2015.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\Covington\2014\14-73 MOO on MTD.wpd